PER CURIAM: *
William Josef Berkley is scheduled to be executed by the State of Texas on April 22, 2010. Berkley moves this Court for a stay of execution and an order authorizing the filing and consideration of a second peti *414 tion for writ of habeas corpus, under 28 U.S.C. § 2244(b)(3)(C). After considering Berkley’s arguments, we DENY both motions.
The facts of this case have been documented in previous opinions by this Court, Berkley v. Quartemian, 310 Fed.Appx. 665 (5th Cir.2009) (unpublished) (per curiam), and the district court, Berkley v. Quarterman (Berkley I), 507 F.Supp.2d 692 (W.D.Tex.2007). We repeat the facts here only as they directly affect the instant motions.
Sophia Martinez stopped at an ATM to make a withdrawal. Berkley I, 507 F.Supp.2d at 702. Bank security cameras recorded a male with a handgun who approached Martinez’s vehicle; shot into the vehicle, apparently wounding Martinez in the head or face; and got in her car, which subsequently drove away. Id. at 702-03. Before trial, Berkley made two confessions. Id. at 703-04. At trial, the district court admitted portions of those confessions which established Berkley’s account of the events that transpired on the night of Martinez’s death: “his gun went off as he approached Martinez’s vehicle”; he “entered her vehicle ... and directed her to drive her vehicle away from the ATM to a deserted area”; when they reached the deserted area, she “initiated multiple episodes of sexual relations between them”; his gun discharged “when she attempted to hug him”; “he passed out and did not wake up for several hours”; when he awoke, he saw Martinez lying on the ground; “he ‘freaked out’ and drove her car to another part of the desert where he drove it off the road” and “he then walked home.” Id. Police found Martinez’s body the next day. Id. at 703.
In the instant motions, Berkley does not argue against the admission or content of his confessions or the ATM video. Instead, he argues that the State used a now-discredited theory to connect three bullets recovered from Martinez’s body and one found in the desert nearby, to a bullet recovered during a search of Berk-ley’s residence. At trial, an FBI forensic examiner used the theory of Comparative Bullet Lead Analysis (“CBLA”) when she testified that all five bullets were manufactured from the same “pot” of lead. The FBI has since acknowledged that this sort of testimony is problematic because it might lead a jury to believe that a “pot” is very small — perhaps as small as a box of ammunition — when in reality a pot might be much larger, thus diluting or negating its probative value. Berkley argues that the admission of this CBLA testimony amounted to a violation of his constitutional rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and that he is actually innocent of capital murder. At the very least, Berkley argues that he has made a prima facie showing sufficient for this Court to authorize the filing of a second habeas application in the district court.
Under § 2244(b)(3)(C), “[t]he court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.” Here, Berkley must make a prima facie showing that “the factual predicate for the claim could not have been discovered previously through the exercise of due diligence,” and that “the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [Berkley] guilty of the underlying offense.” 28 U.S.C. § 2244(b)(2)(B).
*415 Assuming that Berkley can make a pri-ma facie showing that the flaws in the prosecution’s bullet analysis could not have been discovered previously through the exercise of due diligence, his claim still fails because he does not make a prima facie showing that but for the flawed bullet analysis, no reasonable factfinder would have found him guilty of capital murder. In fact, the CBLA testimony went to the gun’s presence at and use in the crime, and was not used to prove that Berkley actually fired the gun. Given the strength of the State’s case, we cannot say that without the CBLA testimony no reasonable factfinder would have found him guilty of capital murder. Berkley’s own confessions, combined with the video from the ATM, establish that he approached Martinez at the ATM; that he shot into her car, apparently wounding her in the head; that they drove to a deserted area; that they had sexual relations; and that his gun discharged at least one more time.
Accordingly, we DENY Berkley’s motions for a stay of execution and an order authorizing the filing and consideration of a second petition for writ of habeas corpus.

 Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.